IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD WILSON,

        Plaintiff,                    No. Civ.S-04-690 DFL JFM

    v.

                                          FINDINGS OF FACT AND
                                          CONCLUSIONS OF LAW

NORBRECK LLC dba JOHNNY
CARINOS et al.,

        Defendants.
_____/

    This matter came on for trial by the court, sitting without a jury, on August 1, 2006.  Having heard oral testimony and received documentary evidence, the court now makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

                                      I.

    Wilson is a disabled person who brings claims for damages and injunctive relief under the Americans with Disabilities Act (ADA") and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 et seq..[1]  Defendants own and operate the Johnny

---

[1] Plaintiff's conclusions of law address only the Unruh Civil Rights Act.  The court treats this as an election of

1

Carino's restaurant in Fairfield, California. Johnny Carino's is a place of public accommodation under the relevant statutes. Wilson's claims are based upon his patronage of the restaurant on several occasions in 2003 and 2004.

Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The Unruh Act incorporates the ADA. Cal. Civ. Code § 51(f).

Under the ADA, the Department of Justice is instructed to issue regulations providing substantive standards for public facilities subject to the ADA. These regulations are known as the ADAAG (ADA Accessibility Guidelines) and are found at 28 C.F.R. Part 36, Appendix A. All parties agree that the ADAAG standards define whether an architectural or other feature of a facility is a "barrier" that discriminates against disabled persons in violation of the ADA. The parties further agree that the California Building Code ("CBC"), Cal. Code of Regs., Title 24, provides substantive standards for violations of the Unruh Act in addition to the ADAAG.

The court has federal question jurisdiction of the ADA claim and supplemental jurisdiction of the state law claim.

---

damages under the Unruh Act as opposed to the Disabled Persons Act, Cal. Civ. Code § 54.1(a)(1).

2

The parties stipulated to the following facts in the Pre-trial Order:

1. Wilson is a sixty-nine year-old married male who has been disabled since 1993;

2. Wilson has severe degenerative joint disease in his neck, legs, shoulder, and spine. He has an irregular heartbeat, multi-joint arthritis, post-traumatic arthritis, peripheral neuropathy, slight foot drop, and limited range of motion of upper extremities.

3. Wilson uses a walking cane or wheelchair (or both) when traveling in public.

4. Wilson drives a van without a wheelchair lift.

5. Wilson has a disabled placard, which has been issued by the State of California, Department of Motor Vehicles.

6. Two days after Wilson's first visit, he hand wrote a letter to the restaurant detailing the barriers he remembered encountering.

7. The restaurant is a sales establishment (open to the public) where patrons (i.e. – the public) are invited to dine.

8. Defendant FairBreck, LLC is the owner and lessor of the land and the facility located at 1640 Gateway Court, Fairfield, CA 94533.

9. Defendant NorBreck, LLC is the operator and lessee of the restaurant.

10. Defendants have never applied for, nor received, a hardship exemption for the restaurant.

11. Defendant NorBreck, LLC provides goods, services, facilities, privileges, advantages, and accommodations at the restaurant.

12. Construction of the restaurant was completed on September 16, 2002.

13. Defendant NorBreck, LLC has been the operator of the restaurant located at 1640 Gateway Court, Fairfield, CA 94533 since it opened.

Following the summary judgment motions, the following issues remained for trial:

    a.   Whether sufficient accessible seating is available in the bar area;

    b.   Whether the toilet paper dispenser violates the California Building Code ("CBC") by not being within 12" of the front edge of the toilet seat;

    c.   Whether the wastebaskets encroach on the clear floor space under the sink;

    d.   Whether the entrance door pressure exceeds 5 pounds of pressure;

    e.   Whether the bar area is accessible; and

    f.   Whether the restaurant has a sufficient number of fixed tables with the necessary 19" knee clearance.

II.

A. <u>Placement of Toilet Paper Dispenser</u>

At the close of Wilson's case in chief, Norbreck moved for judgment pursuant to Fed. Rule Civ. Pro. 52(c) as to issue (b),

4

placement of the toilet paper dispenser.  Wilson claims that the location of the toilet paper dispenser violates ADAAG 4.16.6 because it is not "within reach" and CBC § 1115B.9.3 because it is not within 12 inches of the front edge of the toilet seat. The Court granted defendants' motion on the basis that the evidence did not show the exact placement of the toilet paper dispenser in relation to the front edge of the toilet seat. Because no evidence was offered by plaintiff as to the exact distance between the dispenser and the front edge of the toilet, insufficient evidence was shown to find a violation of the CBC. As to the ADAAG, the court could not infer that the toilet paper dispenser was "out of reach" on the basis of Wilson's testimony, in which he explained that, in fact, he could reach the dispenser by leaning forward.  Moreover, it should be noted that while Wilson uses a wheelchair much of the time, he is able to walk considerable distances and to stand.  He is not paraplegic.  The placement of the toilet paper dispenser was not a barrier to him. Therefore, as to this claim under the Unruh Act and the ADA, Wilson failed to carry his burden of proof.

B.  <u>Accessible Seating in Bar and Restaurant</u>

Plaintiff claims that the accessible "dining seating" in the bar area is inadequate because five percent of the seating must be adequate under ADAAG 5.1 and CBC § 1104B.5.4.  He claims that the one accessible seat at the bar lacks adequate knee clearance and counter space.  He also claims that the other tables in the bar area lack accessible seating because the knee clearance is

5

inadequate. The defense expert, Kim Blackseth, testified that, according to his measurements, the knee clearance in the nearby tables satisfied the applicable ADAAG and CBC minimums.

This particular dispute turns on (1) which tables should be considered part of the bar seating area, and (2) whether the tables provide accessible seating if the disabled person sits in between the table legs, centered on one side of the table. As to the first issue, the court finds that plaintiff has not shown that the "bar area" is a discrete eating area limited to the seats at the actual bar and the booths across from the bar. Rather, the seating includes the tables in the adjoining space and in the so-called "fireplace room" which is not distinct or closed off from the bar.

As to the second issue, the court finds that the knee space clearance complies with all applicable regulations concerning height, width and depth under ADAAG 4.32.3 and CBC § 1122B.3. A disabled person may sit on one side of the table in between the table supports. Apparently plaintiff's expert did not consider this possibility and did not make his own measurements of this part of the table. For this reason, on the very eve of trial, Wilson himself went to the restaurant to measure the tables. His measurements differ from those taken by the defense expert and would suggest inadequate knee space. However, the plaintiff admitted that he had an attack of neuropathy while attempting the measurement. Further, he used an inexact expandable ruler to make the measurement. It is notable that plaintiff's expert did

6

not make a measurement of the space between the supports but only measured the space from the support to the end of the table. Given that both parties consider that an expert should make such measurements, and given that the defense expert made this precise measurement as part of his examination of the facility, and for the further reasons noted above, the court finds that Blackseth's measurement is the more reliable.  Therefore, even if the one accessible seat at the bar is not counted, there are numerous accessible places at the tables in the immediately adjoining space, including the fireplace area, such that the 5% requirement is easily met at what can fairly be described as the "bar area." Accordingly, plaintiff fails to show by a preponderance of the evidence that there was inadequate accessible seating at the bar area.

The court's finding that the non-booth tables provide accessible seating, in compliance with applicable regulations, also addresses plaintiff's claim that the restaurant as a whole lacks sufficient accessible seating.  Given that the tables provide accessible seating, the restaurant as a whole meets the 5% requirement for accessible seating.

C.  <u>Encroachment by Wastebaskets</u>

Wilson asserts that the two wicker wastebaskets in the men's restroom obstructed his access to the sinks in violation of ADAAG 4.19.2 and CBC § 1115B.2.1.1.  However, his testimony in this respect was imprecise as to which visit he encountered the wastebaskets and their exact placement and size.  He was unable

7

to say whether the smaller version of the wastebasket was in violation of the applicable codes. Given this imprecision, the court finds that plaintiff has failed to establish a violation by a preponderance of the evidence.

Moreover, the wastebaskets are light in weight. The defense expert, himself a disabled person in a motorized wheelchair, credibly testified that the wastebaskets present no barrier to a disabled person. Accordingly, the court finds that the wastebaskets are easily moved to provide any needed access to the sinks. If the wastebaskets are in the way, which has not been established, the vast majority of disabled persons, including Wilson, could with little effort slide them a few inches to the side. For all of these reasons, the court finds that the wastebaskets were not a barrier or impediment to plaintiff and did not violate the applicable code sections. Further, and for the same reasons, the court rejects plaintiff's suggestion that the wastebaskets constitute a discriminatory "policy," if not a barrier.

D.  <u>Entrance Door Pressure</u>

Wilson claims that the entrance door pressure violates ADAAG 4.13.11 and CBC § 1133B.2.5 because it requires more than five pounds of force to open.

There are two issues here. The first issue is one of law: what is the applicable upper limit on door pressure, specifically, is it 5 pounds or 8 pounds? The second issue is one of fact: did the door pressure present a barrier to plaintiff

8

Wilson.

The ADAAG does not specify a particular pressure for exterior doors. However, state law does specify a maximum pressure. The 1999 standard prescribes a maximum pressure of 8.5 pounds. The 2001 CBC lowered the maximum to 5 pounds. Because the building permit was issued and plans approved prior to the effective date of the 2001 CBC (November 2002), the court finds that the 8.5 standard is controlling for purposes of state law.

It was the policy of defendants to maintain the door pressure at 5 pounds of pressure. However, the evidence indicates that the door pressure varied during the relevant time period from 5 to 8 pounds.

Plaintiff's testimony on the door pressure during his particular visits was imprecise. Based on his testimony, the court could not find that the front door pressure exceeded 5 pounds on any identified visit. For this reason alone, the claim fails.

The court finds further that at all relevant times the exterior door pressure varied from 5 to 8 pounds and therefore complied with the applicable state standard. As to the federal standard, the court further finds that plaintiff Wilson's disability is not so severe that a door pressure in this range presents a barrier to him. Finally, the court rejects plaintiff's claim that a door pressure over 5 pounds constitutes a "discriminatory policy." In fact, defendants' policy is to attempt to maintain the door pressure at 5 pounds.

E.  Accessibility of Bar Area

To the extent that this claim presents an issue distinct from bar seating, it fails.  There is one accessible seat at the bar with a lowered counter.  The measurements of the knee clearance, counter length, and counter height comply with CBC § 1104.5(4).  The concrete curb has been removed.  Neither the CBC nor the ADAAG require seating for two at the bar itself.  Finally, the ADAAG requires either an accessible counter of 60" or accessible tables in the same area.  The latter requirement is met as explained in section II(B).

For these reasons, the court finds that the bar itself is accessible.

### III.

For the above stated reasons, the court find that plaintiff Wilson has failed to prove violations of the ADA or the Unruh Civil Rights Act.

Judgment shall enter for defendants.

IT IS SO ORDERED.

Dated: 9/14/2006

_____
DAVID F. LEVI
United States District Judge